**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jul 12 2012, 8:55 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**AMY KAROZOS**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

**PATRICK M. RHODES**
Indiana Department of Child Services
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF T.A.B., minor child, | ) ) ) ) | |
| T.B. (FATHER) | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 49A02-1111-JT-1062 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner, | ) ) | |
| and | ) ) | |
| CHILD ADVOCATES INC., | ) ) | |
| (Guardian Ad Litem). | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gary Chavers, Judge Pro Tem
The Honorable Larry Bradley, Magistrate

**July 12, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

Case Summary and Issue

T.K.B. ("Father") appeals the involuntary termination of his parental rights to his minor daughter, T.B. Father raises three issues for our review, which we consolidate and restate as whether sufficient evidence was presented to meet the statutory requirements for terminating Father's rights. Concluding the evidence sufficiently established the statutory requirements for terminating Father's parental rights, we affirm.

Facts and Procedural History

T.B. was born in December 2009, and later that month the Department of Child Services ("DCS") filed a petition alleging T.B. was a child in need of services ("CHINS"). F.E. ("Mother") admitted to the petition and the trial court adjudicated T.B. as a CHINS. On February 16, 2010, the trial court held a disposition hearing and ordered T.B. be placed in a temporary in-home trial visit and established the plan for permanency as reunification with Mother and Father. Petitioner's Exhibit 5. T.B. was placed with Father, who lived with T.B.'s paternal grandmother, for the temporary in-home trial visit. On August 25, 2010, the trial court granted DCS's motion for removal of T.B. from

temporary in-home trial visits and for authorization for relative care or placement through a licensed child placing agency.

On September 7, 2010, the trial court held a detention hearing and ordered that T.B. remain in foster care and removed from the care of Father. However, the court permitted in-home trial visitations for Father, subject to the recommendations of DCS and T.B.'s Guardian ad Litem. In the trial court's October 26, 2010 placement and jurisdiction review hearing, the court ordered Father's visitations suspended due to failed drug screens and his failure to comply with parenting services.

On March 10, 2011, DCS petitioned for involuntary termination of Father's parental rights. After an evidentiary hearing, the trial court granted DCS's petition and terminated Father's parental rights to T.B. Father now appeals. Additional facts will be supplied as appropriate.

## Discussion and Decision

### I. Standard of Review

> This court has long had a highly deferential standard of review in cases concerning the termination of parental rights. Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. The purpose of terminating parental rights is not to punish the parents, but to protect their children. We will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. In determining whether the evidence is sufficient to support the judgment terminating parental rights, this court neither reweighs the evidence nor judges the credibility of witnesses. We consider only the evidence that supports the judgment and the reasonable inferences to be drawn there from. Findings of fact are clearly erroneous only when the record lacks any evidence or reasonable inferences to support them.

In re K.S., 750 N.E.2d 832, 836 (Ind. Ct. App. 2001) (citations omitted).

II. Indiana Code Section 31-35-2-4

Indiana Code section 31-35-2-4[1] provides requirements for terminating a parent-child relationship, including:

> (A) that one (1) of the following is true:
>      (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>      * * *
> (B) that one (1) of the following is true:
>      (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>      (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>      (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
> (C) that termination is in the best interests of the child; and
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

In its order terminating the parent-child relationship between Father and T.B., the trial court found:

> 6.  During the pendency of the CHINS action, additional conditions of instability, and cocaine and marijuana use, surfaced for [Father].
> 7.  [T.B.] was found to be a [CHINS] on February 16, 2010.  The Court proceeded to disposition on that date and formally removed [T.B.] from [Mother] and [Father].  She has now been formally removed for at least six (6) months.
> 8.  [T.B.] was initially placed with [Father] on a temporary in home trial visit . . . .  [Father] was residing with his mother at that time.
> 9.  [T.B.] was then removed in approximately August 2010, after [Father] kept testing for cocaine and marijuana.  [T.B.] has not been placed back with [Father] since that time.
> * * *
> 12.  Home based services were referred for [Father] on April 13, 2010 and lasted six to seven months before being closed out unsuccessfully due to

---

[1] This statute has been amended effective July 1, 2012.  However, the amendment has no bearing on the issues raised by Father.

lack of contact. At the time the services ended, the home based counselor could not recommend reunification.

13. Intensive outpatient substance abuse treatment was referred for [Father] on two occasions. Both closed unsuccessfully.

14. The second referral for IOP was made shortly after [Father]'s parenting time was suspended due to positive screens. Parenting time would have been reinstated upon [Father] providing three consecutive negative screens. Parenting time was never reinstated and [Father] failed to attend outpatient treatment on the second referral.

15. Most of the random urine screens [Father] supplied were positive for cocaine and marijuana. [Father] denied cocaine use on at least one occasion each to the family case manager and his home based counselor.

16. [Father] and his family have a history of substance abuse, and [Father] does not understand how drug usage can impact parenting.

17. [Father]'s home based counselor discussed [Father] doing inpatient substance abuse treatment, which [Father] did not want to do.

18. [Father] has a minimal income of $50.00 to $100.00 per week. [T.B.] received SSI due to being premature, but has no special needs at this time.

19. [Father] had independent housing for a few months during the CHINS proceedings, residing with his mother or girlfriend at other times.

* * *

21. There is a reasonable probability that the conditions that resulted in [T.B.]'s removal and continued placement outside the home will not be remedied by [Father]. [Father] has been unsuccessful in completing services in the many months since disposition in February 2010. Even when confronted with suspended parenting time, [Father] failed to participate in the second IOP referral, and by his own admission he has used both cocaine and marijuana in 2011. Although he claims he is now drug free, he has denied use before and has not provided a clean screen. Instability in independent housing and adequate income also remain issues.

22. Continuation of the parent-child relationship poses a threat to the well-being of [T.B.] . . . . Although [Father]'s parenting skills are not questioned, he does not understand how substance abuse can create unsafe conditions. Substance abuse can interfere with parenting skills, create neglect in its expense, and it is illegal and can lead in [sic] incarceration. There is concern that [Father] lacks the stability to meet [T.B.]'s needs. At this point, continuation of the parent-child relationship would only pose as a barrier to obtaining permanency for [T.B.] through adoption.

* * *

26. Termination . . . is in the best interests of [T.B.] . . .

27. There exists a satisfactory plan for the care and treatment of [T.B.], that being adoption.

Appellant's Appendix at 10-12.

Father argues the trial court erred in concluding the requirements of Indiana Code section 31-35-2-4(b)(2) were met. First, he contends the evidence does not support a finding that T.B. had been removed from him for at least six months under a dispositional decree, and accordingly, the petition to involuntarily terminate his parental rights was premature. The trial court found T.B. was formally removed from both Mother and Father on February 16, 2010, which is more than a year before DCS filed its petition for involuntary termination of Father's parental rights on March 10, 2011. Reviewing the trial court's order from February 16, 2010, it states, "[t]he Court orders the child to be a ward of the Marion County Office of Family and Children," and "[t]he Court now orders the child removed from the care of [Mother] and [Father] pursuant to this Dispositional Order." Petitioner's Exhibit 5. Father argues, however, that T.B. remained in his care pursuant to orders of temporary in-home visitation until August 24, 2010, and therefore the March 2011 petition was premature. However, even if Father is correct that T.B. was not "removed" from Father until August 24, 2010, this is more than six months before March 10, 2011.[2] Thus, whether removal occurred when Father contends it did, or earlier, it still satisfied the six month requirement of Indiana Code section 31-35-2-4(b)(2)(A)(i).

Father also contends the removal requirement of Indiana Code section 31-35-2-4(b)(2)(A)(i) was not satisfied because T.B. was not removed under a dispositional decree. In support of this argument, Father claims T.B. could not have been removed pursuant to a CHINS dispositional decree because the procedural requirements for

---

[2] Although Father's appellate brief states August 24, 2010, based on the record it appears the correct date under his argument would be August 25, 2010. On August 25, 2010, the court issued an order granting DCS's motion for removal from temporary in-home trial visits and for authorization from relative care of licensed child placing agency. Nevertheless, August 25, 2010, is more than six months prior to March 10, 2011.

6

modifying a CHINS dispositional decree were not followed. However, the trial court's February 16, 2010, decree finding T.B. a CHINS also states, "[t]he Court now orders the child removed from the care of [Mother] and [Father] pursuant to this Dispositional Order." Petitioner's Ex. 5. Thus, modification of the dispositional decree was not necessary, and the trial court's conclusion was not clearly erroneous.

Next, Father contends the evidence fails to support the trial court's finding that there is a reasonable probability that the conditions that resulted in T.B.'s removal from Father's care will not be remedied or that continuation of the parent-child relationship poses a threat to T.B.'s well-being. The trial court concluded a reasonable probability exists that Father will not remedy the conditions that resulted in T.B.'s removal. Specifically, the trial court noted Father's inability to successfully complete services offered to him, drug use, and unstable housing and income as evidence of there being a reasonable probability Father would not remedy the conditions causing T.B.'s removal. Father argues the evidence pointed to by the trial court primarily pertains to the time period before T.B.'s removal from Father and that such evidence is insufficient to conclude the reasons for removal will not be remedied.

We disagree. Father's own testimony reveals that when the trial court suspended Father's visits with T.B., it ordered him to accumulate three clean drug screens to have his visits with T.B. reinstated, but Father was unable to do so. He stated he had been using marijuana since he was sixteen years old and cocaine since approximately 2009. Father also testified he makes fifty to one-hundred dollars per week. A DCS case manager, Denise Deen, testified she referred Father for an intensive outpatient program ("IOP") both in July and November 2010, but he failed to consistently attend the services

7

despite Deen providing him with bus passes so he would have transportation. Further, when asked what concerns she had about Father's ability to parent T.B., she listed his drug usage, lack of employment, and unstable housing.

Thus, we cannot say the record lacks evidence supporting the trial court's conclusion that there is a reasonable probability the conditions leading to T.B.'s removal from Father will not be remedied. Father had a lengthy history of drug use and a pattern of failed drug screens, both before and after T.B.'s removal from his care. He likewise did not complete services offered to him for the purposes of rehabilitation. Further, although Father points to contradictory evidence, some evidence revealed Father lived with his mother and only made fifty to one-hundred dollars per week. We will not reweigh the evidence or judge witnesses' credibility. The trial court's conclusion was not clearly erroneous.[3]

Last, Father argues the trial court's conclusion that the termination of his relationship with T.B. is in T.B.'s best interest is clearly erroneous. Father attempts to minimize the trial court's findings leading to this conclusion. He notes the court's statement that "[t]erminating parental rights would free [T.B.] for adoption and permanency in a safe and stable environment where her needs will continue to be met," and argues permanency is an insufficient reason to terminate his parental rights. Appellant's Brief at 22. However, this is an incomplete summation of the trial court's statement and findings and conclusions as a whole. The statement Father refers to not

---

[3] Because Indiana Code section 31-35-2-4(b)(2)(B) only requires that one of the three factors are found true, and we conclude the evidence supports the trial court's conclusion that the first factor was true, we need not determine whether the second factor, that there is a reasonable probability that the continuation of Father and T.B.'s relationship poses a threat to the well-being of T.B., is true. Nevertheless, our reasons for concluding that terminating Father's parental rights is in T.B.'s best interests would also support a determination that there is a reasonable probability that the continuation of Father and T.B.'s relationship poses a threat to T.B.

only refers to permanency being a positive outcome for T.B., but it refers to the trial court's findings that Father is unable to provide a safe and stable environment or fully provide for T.B.'s needs. Despite having adequate parenting skills, the evidence shows he has problems with substance abuse and fails to understand how such substance abuse can negatively impact children and one's ability to effectively parent. Further adding to the instability of his situation, his low income level and inconsistent housing indicate an inability to properly provide for T.B.'s needs. Therefore, the trial court's conclusion that terminating Father's parental rights is in the best interests of T.B. is not clearly erroneous.

### Conclusion

The evidence supports the trial court's conclusions that T.B. was removed from Father for six months before DCS filed its petition to terminate his parental rights, that there is a reasonable probability the conditions leading to T.B.'s removal from Father will not be remedied, and that terminating Father and T.B.'s relationship is in T.B.'s best interests. We therefore affirm.

Affirmed.

BAILEY. J. and MATHIAS, J., concur.